**Richard MUFFOLETTO, Plaintiff,**

v.

**William SESSIONS, as Director of the Federal Bureau of Investigation, United States Justice Department, Defendant.**

**No. CV–88–3173 (ADS).**

United States District Court, E.D. New York.

March 27, 1991.

270

Levine, Robinson & Algios, P.C., Mitchel Field, N.Y. (Carl S. Levine, of counsel), for plaintiff.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. by Christopher G. Lehmann, Asst. U.S. Atty., for defendant.

## OPINION AND ORDER

SPATT, District Judge.

A requester who "substantially prevails" in litigation brought to obtain information from a federal agency under the Freedom of Information Act becomes "eligible" for an award of attorney's fees under the statute. Before fees may be awarded, however, the requester bears the additional burden of demonstrating that he or she is "entitled" to the award, on the ground that such disclosure has or will result in a "benefit to the public". In this regard, the plaintiff moves pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), for an award of attor-

ney's fees in the amount of $11,326.26. The defendant opposes this application in its entirety and, in turn, cross-moves to dismiss the action for lack of prosecution.

For the reasons that follow, this Court finds that although the plaintiff is "eligible" for attorney's fees under the statute, he is not "entitled" to an award since he has failed to demonstrate that the action is of any benefit to the public since the documents at issue were sought solely to assist the plaintiff in the defense of a separate private civil action.

## I.  FACTUAL BACKGROUND

The plaintiff Richard Muffoletto ("Muffoletto"), is a defendant in a civil action pending in the Supreme Court of the State of New York, County of New York, entitled, *Beneficial Capital Corp. v. Dato Fields Sys. Corp., The Shepherd Agency, Inc. and Richard Muffoletto,* No. 12707/84 (Glen, J.), which is an action to recover debts allegedly owed by Muffoletto to Beneficial Capital Corporation ("BCC") based on certain notes and/or guarantees.  One of Muffoletto's defenses to one of the notes is "payment", as set forth in the fourth affirmative defense in Muffoletto's answer, as follows:

"18.  The balance due on the note which is the subject of the Complaint's first cause of action has been paid in full on behalf of Dato Fields by Olympic Construction Corporation, a corporation in which Defendant Richard Muffoletto had an interest and which was, in fact, controlled by the Federal Bureau of Investigation in connection with certain investigations of governmental corruption, popularly known as "ABSCAM", in which both Muffoletto and John Hoey, Plaintiff's President, were cooperating.  Said payments were made to John Hoey personally for the account of Plaintiff."

In order to prove this defense and to defeat BCC's motion for summary judgment in the state-court action, Muffoletto was required to come forward with evidence of the allegations contained in the defense, namely, that he was working with the Federal Bureau of Investigation

("FBI"); that Olympic Construction Corporation ("OCC") was controlled by the FBI; that John Hoey ("Hoey"), BCC's President, was involved in the same FBI investigation; that payments were made by OCC and/or the FBI to Hoey; and that such payments, however denominated, were in full repayment of one of the notes at issue.

Muffoletto's contract with the FBI concerning the OCC, dated November 13, 1979, however, contained a "nondisclosure" clause that provided as follows:

"22.  *Nondisclosure:* Muffoletto agrees not to disclose information pertaining to this contract at any time during performance to any person or entity without the permission of the Bureau.  Following termination of this Agreement, because of the necessity to protect confidential sources and investigative techniques, Contractors agree to obtain prior written permission of the Director of the Bureau before any disclosure may be made."

On April 8, 1988, Muffoletto, through his attorneys, wrote to request the necessary permission to disclose the details of his relationship with the FBI.  He also requested documents that Muffoletto believed were necessary to defend the state-court action.  The FBI failed to respond to this request, which prompted Muffoletto to file a formal request under the Freedom of Information Act ("FOIA"), by letter dated June 3, 1988.

The FBI responded to Muffoletto's FOIA request by letter dated June 29, 1988, advising him that they were searching their files and would notify Muffoletto of the results sometime in the future.

Muffoletto next contacted the FBI by telephone on several occasions in early August 1988.  On August 23, 1988, the FBI advised Muffoletto's attorneys that they had located some documents that "may" pertain to Muffoletto's request, but needed more information as to other information requested.  Accordingly, the FBI requested Muffoletto to furnish it with additional information to assist in the processing of his request.

In the interim, on September 7, 1988, State Supreme Court Justice S. Kristin Booth Glen rendered a decision denying BCC's motion for summary judgment in the state-court action, without prejudice to renewal after further discovery to permit Muffoletto sufficient time to obtain the necessary documentary evidence from the FBI.

By letter dated September 14, 1988, Muffoletto provided the FBI with the additional information requested to enable the FBI to comply with the FOIA request. Muffoletto's file was then allegedly forwarded to one of the FBI's Record Management Division's Disclosure Units for further processing. His file was personally reviewed by supervisory Special Agent Joseph P. Smith, III, Chief of the Disclosure Unit.

Agent Smith, then relatively new to the position of Unit Chief, states that as of June 1988 there were approximately 10,000 FOIA requests pending, "and the normal processing time for a request was over one year" (Smith Declaration ¶ 2, at p. 2). During the course of reviewing Muffoletto's file, Agent Smith "realized the request was being made on behalf of a party who had a record of cooperation with and assistance to the FBI" (Smith Declaration ¶ 4, at p. 4). As a result, Agent Smith allegedly assigned the file for "accelerated processing". Smith alleges that his initial review of Muffoletto's file occurred "in or about early October, 1988" (Smith Declaration ¶ 4, at p. 3). In the interim, receiving no response from the FBI, on October 11, 1988 Muffoletto commenced this action under the FOIA. On October 3, 1989, just prior to commencing this action, Justice Glen in the state-court action granted BCC's renewed motion for summary judgment against Muffoletto.

Sometime between October 11 and 14, 1988, counsel for Muffoletto and the FBI engaged in a series of telephone conversations, during the course of which Agent Smith suggested to counsel that in order to expedite production of the requested records, a subpoena should be issued to the FBI in connection with the state-court action (Smith Declaration ¶ 6, at p. 3). According to the FBI, such a request would result in a speedier release of the information.

On October 20, 1988, a subpoena was issued in connection with the state-court action and served upon the FBI. On October 21, 1988, counsel for Muffoletto received numerous documents that were responsive to the initial FOIA request and/or subpoena. By the FBI's own account, "*prior* even to the actual receipt of the subpoena by the Bureau", initial processing of documents responsive to Muffoletto's FOIA request was undertaken (Cole Declaration ¶ 4, at p. 3).

On October 27, 1988, the FBI requested further information from Muffoletto in order to continue to process his request, which, in turn, he provided on October 31, 1988. In the meantime, the parties entered into several stipulations extending the FBI's time to answer the Complaint in this action.

On January 17, 1989, through the Civil Litigation Unit, the FBI released approximately 880 additional pages of documents. According to the FBI's account, these documents were released pursuant to the subpoena, rather than the FOIA request (Defendant's Memorandum of Law in Opposition at p. 11). Later, on March 10, 1989, another release of documents consisting of 169 pages was made to Muffoletto.

## II. PROCEDURAL SETTING

Muffoletto moves pursuant to the FOIA, 5 U.S.C. § 552(a)(4)(E), for reasonable attorney's fees and costs in connection with his efforts to secure the requested documents from the FBI under the FOIA. Specifically, Muffoletto seeks a total sum of $11,326.26 for attorney's fees and disbursements.

The FBI opposes this motion on five grounds: (1) that Muffoletto is not "eligible" for an award of attorney's fees under the FOIA; (2) that even if eligible, Muffoletto is not "entitled" to an award of attorney's fees; (3) that in any event, the fees sought by Muffoletto are excessive; (4) that if the release of documents by the FBI is deemed a response to a FOIA request,

then the FBI is entitled to the applicable processing fees and costs in the amount of $49,384.00; and, (5) this Court should dismiss the plaintiff's action for failure to prosecute.

In reply, Muffoletto consents to the dismissal of this action, subject only to the resolution of his motion for attorney's fees and costs (Muffoletto's Reply Memorandum of Law at p. 10).

## III. DISCUSSION

### (a) *Plaintiff's Request for Fees.*

The Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E), permits the Court to award reasonable attorney's fees and costs to parties who have "substantially prevailed" in litigation brought under that statute:

> "The Court may assess against the United States reasonable attorneys fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."

■ The phrase "substantially prevailed" has been interpreted in this Circuit to mean that "a plaintiff must show at minimum that the prosecution of the action could reasonably have been regarded as necessary and that the action had substantial causative effect on the delivery of the information" (*Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 513 [2d Cir.1976]; *see also Nicolau v. United States*, 699 F.Supp. 1063, 1066 [S.D. N.Y.1988]). A plaintiff may have "prevailed", even if a final judgment has not been granted in his or her favor (*see Vermont Low Income Advocacy Council, Inc. v. Usery, supra*, 546 F.2d at p. 513; *see also Kaye v. Burns*, 411 F.Supp. 897, 901–02 [S.D.N.Y.1976] ["substantially prevailed" includes when documents have been produced by the federal agency during the pendency of the action]).

■ In determining whether to award attorney's fees under section 552(a)(4)(E), a two-step inquiry is undertaken: (1) is the plaintiff "eligible" for such an award?; and, if so, (2) is the plaintiff "entitled" to such an award? (*see Fund For Constitutional Gov't v. National Archives & Records Serv.*, 656 F.2d 856, 870 [D.C.Cir. 1981]; *Fenster v. Brown*, 617 F.2d 740, 742 [D.C.Cir.1979]; *Cox v. United States Dep't of Justice*, 601 F.2d 1, 6–7 [D.C.Cir.1979]). If the Court finds that the requester is both eligible for and entitled to fees and costs under the statute, then the Court must determine a reasonable amount to be awarded. Each of those elements will be considered separately.

1. "Eligibility" for Attorney's Fees:

■■ "Eligibility" is established by the requester demonstrating that he or she has "substantially prevailed" in the FOIA action (*see Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587–88 [D.C.Cir. 1981]). Specifically, the party seeking attorney's fees under the statute bears the burden to show "that a causal nexus exists between [the] action and the agency's surrender of the information" (*Cox v. United States Dep't of Justice, supra*, 601 F.2d at p. 6, *citing Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 [D.C.Cir.1977]). Something more than the mere release of information at or about the time the complaint was filed must be demonstrated to show a "causal nexus" (*see Weisberg v. U.S. Dep't of Justice*, 848 F.2d 1265, 1268 [D.C.Cir.1988] ["It is clear, however, that 'the mere filing of a complaint and the subsequent release of the documents is insufficient to establish causation'" [citation omitted] ]; *Bullard v. Webster*, 623 F.2d 1042, 1047 [5th Cir.1980] ["It is not enough that [plaintiff] requested information and it was provided. The FBI would have to oppose the release of the documents and [plaintiff] would have to substantially prevail"], *cert. denied*, 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 [1981]; *Simon v. United States*, 587 F.Supp. 1029, 1031 [D.D.C.1984] ["the mere sequence of events—*i.e.*, that production followed the initiation of a suit—does not establish plaintiffs' eligibility for fees"] ).

■ Despite numerous telephonic and written communications to the FBI for the requested information on an informal basis since April 8, 1988, and his formal request

as of June 3, 1988, Muffoletto was unable to procure the documents allegedly necessary for his defense of the civil action pending in state court. Although the FBI never denied his request outright, Muffoletto contends that the Government's dilatory or obdurate behavior necessitated the commencement of this suit.

It cannot be said that the first production of documents by the FBI on October 21, 1988 was merely furnished coincidentally with the filing of this lawsuit on October 11, 1988. In fact, Agent Smith of the FBI, assigned to process Muffoletto's request, had a telephone conversation with counsel for plaintiff the day this lawsuit was commenced (*see* Smith Declaration ¶¶ 6–7). It was in that conversation for the first time that Smith suggested an alternative to pursuing the FOIA request, namely, issuing a subpoena in connection with the state-court action (*id.*). For the ensuing several days, Muffoletto's counsel engaged in several telephonic conversations with the FBI in connection with the subpoena and in an effort to obtain the requested documents (*see* Cole Declaration ¶ 3). Once this action was commenced, but *prior* to the FBI's actual receipt of the subpoena, the FBI began processing documents responsive to the plaintiff's request (Cole Declaration ¶ 4). Muffoletto ultimately received three separate shipments of documents from the FBI: a copy of his contract with the FBI; and, on two later occasions, shipments of "processed" documents. However, receipt of all of these documents did not even begin until six months after the plaintiff's initial informal request in April 1988, four months after the formal written request was made in June 1988, and ten days after the institution of the FOIA lawsuit and numerous telephone conferences and negotiations between the parties.

Even though the documents may have been released in response to a subpoena and there was never any outright denial of the request, this Court finds that the FBI's movement was in direct response to plaintiff's FOIA request and the institution of this action. This lawsuit clearly provided the impetus for the FBI to act, even if simply to negotiate with Muffoletto in a more expeditious manner. Although no evidence in the record suggests that this delay was done willfully or out of malice, it is obvious that the FBI was "dragging its bureaucratic feet".

Additionally, even though Muffoletto did not pursue this case to judgment, such action is not necessary (*see Vermont Low Income Advocacy Council, Inc. v. Usery, supra,* 546 F.2d at p. 513). In this Court's view, a causal nexus has been shown. Therefore, the plaintiff has demonstrated that he has "substantially prevailed", and thus becomes "eligible" for an award of attorney's fees within the meaning of the FOIA, 5 U.S.C. § 552(a)(4)(E) (*cf. Miller v. United States Dep't of State,* 779 F.2d 1378, 1389 [8th Cir.1985] [if the plaintiff has not obtained judgment, it must be shown that the action was reasonably regarded as necessary, and a causative effect]).

2. "Entitlement" to Attorney's Fees:

Having determined Muffoletto's "eligibility" for attorney's fees by reason of having "substantially prevailed" in this action, the Court now turns to the second part of the inquiry, namely, whether he is "entitled" to the award. Even if a litigant is "eligible" for fees, the award is limited to those instances where it would promote the purpose of the FOIA to encourage the dissemination of information that benefits the public and discourage agencies from withholding valuable information (*see LaSalle Extension Univ. v. Federal Trade Comm'n,* 627 F.2d 481, 484 [D.C.Cir.1980]; *Alliance for Responsible CFC Policy, Inc. v. Costle,* 631 F.Supp. 1469, 1470 [D.D.C. 1986]). As noted in *Simon v. United States, supra,* 587 F.Supp. at p. 1032, "the statute's legislative history clearly reveals that the fee provision was designed for limited purposes—as an incentive to good faith administrative disclosure and to encourage suits that benefit the public interest …—not as a reward for all successful litigants" (citations omitted). Fee awards under the FOIA are considered "discretionary rather than presumptive", and the underlying purpose is "not to provide an

award to *any* plaintiff who successfully forced the government to disclose the requested information" (*Lovell v. Alderete*, 630 F.2d 428, 431 n. 2 [5th Cir.1980] [emphasis supplied]).

■ To assist in arriving at a determination on the issue of a requester's "entitlement" to a fee award, the following four factors serve as a guidepost for the Court's consideration: "(1) the benefit of the release to the public; (2) the commercial benefit of the release to the plaintiff; (3) the nature of the plaintiff's interest; and (4) the reasonableness of the agency's withholding" (*Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1498 [D.C.Cir.1984]; *Education/Instruccion, Inc. v. United States Dep't of Housing and Urban Dev.*, 649 F.2d 4, 7, [1st Cir.1981]; *Lovell v. Alderete, supra*, 630 F.2d at p. 431–32; *LaSalle Extension Univ. v. Federal Trade Comm'n, supra*, 627 F.2d at p. 483; *see also* H.R.Conf.Rep. No. 1200, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6267, 6285, 6288 [recognizing the four factors]). The "public benefit" factor, "does not particularly favor attorneys' fees where the award would merely subsidize a matter of private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices" (*Blue v. Bureau of Prisons*, 570 F.2d 529, 533–34 [5th Cir.1978]). An award of attorney's fees is considered inappropriate where the lawsuit is commenced solely to further the private commercial interests of the plaintiff (*see LaSalle Extension Univ. v. Federal Trade Comm'n, supra*, 627 F.2d at p. 484; *Fenster v. Brown, supra*, 617 F.2d at p. 743). Only those FOIA actions, "which are motivated by scholarly, journalistic, or public interest concerns are the proper recipients of fees awards" (*Alliance for Responsible CFC Policy, Inc. v. Costle, supra*, 631 F.Supp. at p. 1471, *citing* S.Rep. No. 854, 93d Cong., 2d Sess. 19 [1974]). "The simple disclosure of government documents does not satisfy the public interest factor" (*Alliance for Responsible CFC Policy, Inc. v. Costle, supra*, 631 F.Supp. at p. 1471).

■ It is conceded by Muffoletto that he is "a private citizen seeking documents for his own private use, and not a historian ... eager to unearth historical facts, or a person or organization, as in many FOIA cases, bent on exploring the inner workings of government in order to enlighten the public" (Plaintiff's Memorandum of Law in Support at p. 15). The plaintiff's sole motivation in seeking the requested information was for discovery purposes, namely, to assist him in the defense of a private civil action. Concededly, strong personal interests were at stake.

Despite these seemingly "personal" or "private" interests, and contrary to the FBI's contention, there is here *some* identifiable public interest at stake. That is, although the public interest is not directly served by the mere aiding of a private litigant's lawsuit, it is a benefit to some degree by ensuring open access to government information (*Seegull Mfg. Co. v. N.L.R.B.*, 741 F.2d 882, 886 n. 1 [6th Cir.1984]). However, this benefit alone, is not sufficient:

> "The release of any government document benefits the public by increasing citizens' knowledge of their government. Congress did not have this sort of broadly defined benefit in mind, however, in enacting section 552(a)(4)(E)" (*Fenster v. Brown, supra*, 617 F.2d at p. 744).

Furnishing documents in the context of aiding a private litigant in discovery in a civil lawsuit to which the requester is a party, is clearly a personal benefit or gain accruing solely to the individual, and the courts generally do not recognize that a benefit to the public exists on that ground alone (*see, e.g., Stein v. Department of Justice*, 662 F.2d 1245, 1263 [7th Cir.1981] [in upholding denial of FOIA attorney fee request, court noted that one of the factors relied upon by the district court was that the plaintiff intended to use some of the requested material in a separate civil action seeking damages]; *Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704, 712 [D.C.Cir.1977] [" 'Under the first criterion a court ... would not award fees

if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government' "] [*quoting* S.Rep. No. 93–854, 93d Cong., 2d Sess. 19 [1974]]; *Education–Instruccion, Inc. v. United States Dep't of Housing and Urban Dev.,* 87 F.R.D. 112, 116 [D.Mass.1980] ["... the public should not be required to finance the investigation of a FOIA plaintiff who makes his request with an eye toward prosecuting some litigation to his own benefit"], *aff'd,* 649 F.2d 4 [1st Cir.1981]; *see generally* 1 J. O'Reilly, *Federal Information Disclosure* § 8.27, at p. 8–92 [2d ed. 1990] [in an attempt to seek the denial of a fee application, "[t]he agency may also show that the FOIA action was merely in support of discovery in a parallel civil action by the same private plaintiff"] [footnote and citations omitted]).

Where the federal agency acts unreasonably or improperly refuses to comply with the Act, however, then arguably a public interest in awarding fees under the statute arises, even if the primary purpose of the requester in seeking the information is in connection with a private lawsuit (*Seagull Mfg. Co. v. N.L.R.B., supra,* 741 F.2d at p. 886 n. 1). The benefit to the public, then, is to deter agency misconduct.

This Court has been able to locate only one reported decision, *Thomas v. Environmental Protection Agency,* 554 F.Supp. 418 (W.D.N.Y.1983), in which attorney's fees were awarded under section 552(a)(4)(E), even though the information requested was for the sole purpose of assisting the plaintiff in the prosecution of a private state-court action. In *Thomas,* the plaintiff's attorney requested certain documents from the United States Environmental Protection Agency concerning recalls of Volkswagen automobiles that he believed would assist the plaintiff in connection with a class action commenced against the Volkswagen Company. The court first found that the plaintiff had "substantially prevailed" in the FOIA action, and then determined that despite the plaintiff's concededly private interest in obtaining the information, there was also "a

rather limited advantage to the general public" (554 F.Supp. at p. 419). Although the plaintiff requested a total of $4,725.00 in attorney's fees and costs, the Court found such a request "excessive under the circumstances", and awarded only $606.04.

In *Thomas,* however, the court did not provide the reasoning for its conclusion that under those circumstances there was a limited benefit to the public, nor did it cite any controlling authority. Thus, to the extent that the *Thomas* decision may tend to enunciate a rule that there is some benefit to the public whenever a private litigant makes a request under the FOIA and is successful, this Court declines to adopt such a broad principle. As a matter of fact, because it concerned a class action and an attempt to recall an alleged defective type of automobile, conceivably there could be a limited benefit to the public. In this Court's view, however, if the requester is seeking information under the FOIA solely for his or her personal gain to either prosecute or defend a private civil litigation, absent any other factor tending to indicate that a benefit to the public would be derived by the disclosure, that motivation alone is insufficient to demonstrate any "public benefit" so as to entitle the requester to an award.

Applying the first factor to the facts of this case, Muffoletto's personal interest was the primary, if not the sole reason for this FOIA action. There is no identifiable public interest. Muffoletto has failed to articulate any discernable benefit to the public that has or would occur by reason of the FBI's disclosure of the requested documents in this case.

Muffoletto's argument that the benefit to the public is that it would cause the government to take its responsibilities seriously under the FOIA, is without merit. The Court notes that his request for information and documents was never actually denied by the FBI. Muffoletto commenced this action while the parties were negotiating and during the time when the FBI was searching its files. Under these circumstances, although there was some delay by the government, Muffoletto has failed to

show that the FBI was acting in some way willfully recalcitrant or obdurate. Rather, in light of the approximately 10,000 requests that were pending at the time of Muffoletto's request, when the "normal processing time for a request was over one year" (Smith Declaration ¶ 2), the FBI did not act so improperly that a fee award would create a benefit to the public by acting as a deterrent. Under the facts of this case the ultimate benefit to the public to compel the FBI to act more expeditiously is remote and of little consequence. In sum, although some prodding was necessary—including the institution of this suit—the record amply supports a finding that the FBI did in fact "take its responsibilities seriously" under the FOIA.

Finally, it is also significant that Muffoletto, at the behest of the FBI, ultimately served a subpoena in an attempt to procure the requested information. The Court notes that he could have availed himself of this procedural vehicle as part of the Supreme Court lawsuit at an earlier stage so as to avoid this litigation altogether.

Accordingly, as to the first factor, the Court finds that the plaintiff failed to demonstrate any colorable benefit to the public under the circumstances of this case.

Turning to the second and third factors, namely, the commercial benefit gained and the nature of the requester's interest, these two factors are usually considered together (*see Cazalas v. United States Dep't of Justice*, 709 F.2d 1051, 1054 [5th Cir.1983]; *Fenster v. Brown, supra,* 617 F.2d at p. 743). Since the documents sought by Muffoletto were admittedly sought only to defend his civil lawsuit, the interest, being a private one, may be considered "commercially neutral" (*see Seegull Mfg. Co. v. N.L.R.B., supra,* 741 F.2d at p. 886).

Finally, the fourth factor is whether the government's withholding of the records had a reasonable basis in law. Concededly, there was no outright refusal by the FBI to produce the documents. There was, according to Muffoletto, "simply the typical bureaucratic obduracy, non-cooperation and foot-dragging" (Plaintiff's Memorandum of Law In Support at p. 16; *cf. Crooker v.*

*United States Dep't of Treasury,* 663 F.2d 140, 142 [D.C.Cir.1980] ["The government cannot avoid the award of attorney's fees by ignoring or negligently failing to respond to repeated reminders that the bureaucratic machinery has not worked"] ).

However, as stated above, in this Court's view, there was in this case, administrative delay rather than unreasonable or unjustifiable withholding of the information or documents. Muffoletto's initial informal request was made in April 1988. In June 1988, Muffoletto filed a formal written request. He commenced suit in early October 1988, and the first wave of documents were produced by the third week of October 1988. This processing time is approximately six months earlier than the usual processing time for the FBI at that time (Smith Declaration ¶ 2).

Accordingly, based upon the foregoing, and considering all of the relevant factors, this Court is of the view that although Muffoletto is "eligible" for an award of attorney's fees pursuant to 5 U.S.C. 552(a)(4)(E), he is not so "entitled". Therefore, Muffoletto's motion for attorney's fees is denied.

(b) *The FBI's Request for Costs.*

The FBI alleges that if this Court deems the release of documents as having been done pursuant to the FOIA, which it has, rather than the subpoena, then "search", "duplication" and "review" costs should be assessed against Muffoletto and awarded to the FBI under the applicable regulations, which provide for the imposition of such costs upon requesters under the FOIA. Specifically, the FBI seeks $49,-284.00 for a "review" of the documents, $100.00 for "duplication" costs, and the costs associated with the actual "search" of the files.

When a requester seeks records for "commercial use", the federal agency may seek fees "limited to reasonable standard charges for document *search, duplication,* and *review*" (5 U.S.C. § 552[a][4][A][ii][I] [emphasis supplied] ). As stated above, Muffoletto sought the

**278**

records not for any "commercial" purpose, but rather for his personal use in defending the state-court action. Accordingly, this section is inapplicable.

 Pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), when the records are not sought for commercial use, *and* the request is made by an educational or non-commercial institution for scholarly or scientific purposes, the fees are limited to reasonable charges for document duplication only. Since Muffoletto is not an educational or non-commercial institution seeking the information for scholarly or scientific purposes, this section is also inapplicable.

▇ If the records are not requested for commercial use and the request is not made by an educational or non-commercial scientific institution, as in this situation, the "fees shall be limited to reasonable standard charges for document *search* and *duplication*" (5 U.S.C. § 552[a][4][A][ii][III] [emphasis supplied]).

Having requested these documents for the purpose of defending himself in a private litigation, in this Court's view, Muffoletto comes within the purview of section 552(a)(4)(A)(ii)(III), and is thus only liable to the agency for the reasonable charges for the document "search" and "duplication", and not for a "review" of the information (*see Larson v. C.I.A.*, 843 F.2d 1481, 1482 [D.C.Cir.1988] [FOIA "generally requires requesters to pay search and duplication costs"] [citations omitted]). Accordingly, the FBI is not entitled to recover $49,-284.00 from plaintiff for a review of the documents pursuant to plaintiff's FOIA request, but it is entitled to recover the $100.00 in "duplication" costs, and the reasonable costs associated with the document "search". Since the parties have not submitted figures on the issue of the amount of "search" costs, they are directed to provide affidavits on that issue.

## IV. CONCLUSION

For the reasons stated above, although the plaintiff is "eligible", he is not "entitled" to an award of attorney's fees pursu-

ant to 5 U.S.C. § 552(a)(4)(E). The defendant is entitled to recover the reasonable standard charges for the document search and duplication.

The defendant is directed to serve and file an affidavit with supporting papers by no later than April 15, 1991, setting forth in detail the amount allegedly due for the document search and duplication. The plaintiff shall serve and file papers in opposition, if he so desires, by no later than April 30, 1991.

Subject to the final resolution of the amount of costs for the search and duplication, this action is hereby dismissed, with prejudice.

SO ORDERED