**Salem AJLUNI, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGA- TION, and United States Department of Justice, Defendants.**

No. 94–CV–325.

United States District Court, N.D. New York.

Nov. 29, 1996.

Solomon, Zauderer, Ellenhorn, New York City (Lee A. Schneider, of counsel), for Plaintiff.

Thomas J. Maroney, U.S.A., Syracuse, NY (William H. Pease, Asst. U.S. Atty., of counsel), for Defendants.

## MEMORANDUM, DECISION and ORDER

McAVOY, Chief District Judge.

Pending before the Court in this action, brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, is defendant's Motion for Summary Judgment and plaintiff's Motions for Further Discovery and for Attorney's Fees and Costs.

Having conducted an *in camera* inspection of the documents still in dispute, and having carefully considered the parties many filings and the applicable case law, the Court will grant the defendant's summary judgment motion and deny plaintiff's request for further discovery. The parties are hereby directed to submit additional briefing on the issue of attorney's fees.

## I. Background

A brief overview of the protracted factual and procedural history of this litigation is merited as the case approaches its denouement.

Plaintiff Salem Ajluni has been the subject of a long term investigation by defendant FBI due to his leadership role with the General Union of Palestinian Students on the University of Utah campus. The FBI alleges that plaintiff also is associated with the Popular Front for the Liberation of Palestine, a group that the FBI characterizes as a known terrorist organization.

On July 13, 1988, plaintiff made various FOIA requests for information relating to him to the FBI at their general headquarters, as well as the Detroit, Salt Lake City and San Francisco field offices. On November 3, 1992, plaintiff received the requested information in the form of 51 pages of heavily redacted material out of 352 pages that the FBI found responsive to plaintiff's request.[1]

---

1. Where whole pages were withheld because redacted and unredacted material was intertwined, the FBI inserted "pages withheld" forms.

Plaintiff administratively appealed those results and the FBI's decisions were, in large part, affirmed.

On March 14, 1994, plaintiff commenced this action under the FOIA and the Privacy Act, 5 U.S.C. § 552(a), to challenge the FBI's withholding of documents or portions thereof, and seeking an order from this Court making the requested records immediately available. Plaintiff also sought immediate discovery of the procedures by which the FBI classifies information for national security purposes, as well as the procedures employed in applying the FOIA exemptions. The FBI refused to respond to this request and sought a protective order.

On October 25, 1994, Magistrate Judge Ralph W. Smith entered a protective order staying discovery, and ordered the FBI to produce a *Vaughn* index by March 24, 1995. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The FBI produced the *Vaughn* index and moved for summary judgment on June 15, 1995. Plaintiff opposed the motion and cross-moved for further discovery pursuant to Fed.R.Civ.P 56(f), and for attorney's fees.

In a decision from the bench rendered August 14, 1995, this Court found that "the defendant's *Vaughn* index [was] completely inadequate for each purpose such an index is expected to serve ... [s]ubstantively, the index [was] an equally resounding failure." (Tr. of 8/14/96 at 3–4). As a result, the Court directed the FBI to produce an amended *Vaughn* index, and reserved on plaintiff's cross-motions. The FBI filed its amended index on December 14, 1995, along with its renewed motion for summary judgment. Plaintiff opposed and renewed his cross-motions.

In a Memorandum, Decision and Order dated July 13, 1996, the Court found that the FBI, in the amended index, had carried its burden of justifying its use of the § 552(b)(1) exemption for "classified information."[2] *Ajluni v. FBI,* No. 94–CV–325 at 10, 1996 WL 776996 (July 13, 1996). The Court held, however, that the amended index did not entitle the FBI to summary judgment on their asserted exemptions under § 552(b)(7)(C) and (b)(7)(D).[3] Therefore, the Court directed the FBI to produce yet another amended index, and continued to reserve on plaintiff's cross-motions.

By letter dated August 5, 1996, the FBI wrote this Court asserting that "short of turning over the very information the FBI is seeking to protect, there is no additional information which the FBI believes that it can provide the court other than that which has already been detailed in the four prior declarations filed in this case." (Def. Letter Brief of 8/5/96 at 1). Thus, the FBI requested that this Court conduct an *in camera* review of those documents still in dispute. Plaintiff responded by letter dated August 8, 1996, requesting that the Court deny defendant's motion and be ordered to submit the second amended *Vaughn* index. On September 21, 1996, this Court granted defendant's request for *in camera* inspection.

On October 16, 1996, defendant submitted for inspection the documents in question in wholly unredacted form, which the Court thoroughly reviewed in chambers during the course of an *in camera* hearing. Present at the hearing were the Assistant United States Attorney for the Northern District of New York, and three representatives from the FBI. Plaintiff's counsel was not present in chambers during the hearing.

2. Exemption One of the FOIA provides that "this section does not apply to matters that are: (A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to such an Executive Order." 5 U.S.C. § 552(b)(1).

3. With respect to the (b)(7)(D) exemption, the Court held that "the FBI has carried its burden of establishing the propriety of its (b)(7)(D)–2 redactions as to the names and identification

numbers of such sources ..." *Ajluni,* Order of July 13, 1996 at 11. The Court went on to hold, however, that the FBI's Amended Index was inadequate to justify its "broad redactions of information which the FBI claims could *lead* to the identity of the source ...". *Id.* at 11–12.

Plaintiff conceded that the FBI satisfied the threshold showing of "compiled for law enforcement purposes" as to both the (b)(7)(C) and (b)(7)(D) exemptions. *Id.* at 10.

## II. Discussion

### A. Standard for Summary Judgment

Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand*, 807 F.2d 44 (3d Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985) *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Under FOIA, an agency seeking to withhold information it its files must show that it is entitled to withhold it under the specific exemptions listed in the statute, 5 U.S.C. § 552(b)(2)–(9), which are meant to prevent specific harms from the release of certain records. The burden is on the agency to justify nondisclosure and the exemptions must be interpreted to give effect to the strong Congressional intent of favoring disclosure under FOIA. *Ferguson v. F.B.I.*, 762 F.Supp. 1082, 1087 (S.D.N.Y.1991), *rev'd in part on other grounds*, 957 F.2d 1059 (2d Cir.1992). The Court acknowledges that the FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" *FBI v. Abramson*, 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978)). Yet while "[a] broad construction of the exemptions would be contrary to the express language of the Act," *Wellford v. Hardin*, 444 F.2d 21, 25 (4th Cir.1971); see FOIA, 5 U.S.C. § 552(c), "it is equally clear 'that the statutory exemptions are intended to have meaningful reach and application.'" *Simon v. U.S. Dept. of Justice*, 752 F.Supp. 14, 16 (D.D.C.1990) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989)), *aff'd*, 980 F.2d 782 (D.C.Cir.1992).

It is with these considerations in mind that the Court turns to defendant's motion for summary judgment.

### B. The Claimed Exemptions

The first exemption at issue is 5 U.S.C. § 552(b)(7)(C), which provides, in pertinent part, that

[t]his section does not apply to matters that are ... records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy.

The FBI has further subdivided this exemption into more specific subsections, two of which remain at issue here: § 552(b)(7)(C)–2, names of and/or identifying information concerning third parties who are of investigative interest to the FBI; and § 552(b)(7)(C)–3, names of and/or identifying information about third parties merely mentioned. The parties agree that the FBI has satisfied the required threshold showing that the material was "compiled for law enforcement purposes." In order to prevail on a claimed exemption under (b)(7)(C), however, the FBI also must demonstrate that the harm specified in the exemption would flow from disclosure. *U.S. Dept. of Justice v. Landano*, 508 U.S. 165, 170, 113 S.Ct. 2014, 2019, 124 L.Ed.2d 84 (1993).

The (b)(7)(C) exemptions will apply if the interest in public disclosure is outweighed by the invasion of privacy that would result from release of the information. *See U.S. Dept. of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989); *Massey v. FBI*, 3 F.3d 620, 624 (2d Cir.1993). "[I]ndividuals have substantial privacy inter-

ests in information that either confirms or suggests that they have been subject to criminal investigations or proceedings." *Massey*, 3 F.3d at 624; *see also Lawyers Comm. for Human Rights v. INS*, 721 F.Supp. 552, 565 (S.D.N.Y.1989) (" 'It is generally recognized that the mention of an individual's name in a law enforcement file will engender comment and speculation and carr[ies] a stigmatizing connotation.' ") (quoting *Branch v. FBI*, 658 F.Supp. 204, 209 (D.D.C.1987)). These interests arise not only for those who are themselves the subjects of the investigation, but for individuals who are collaterally involved as well. "Suspects, interviewees and witnesses have a privacy interest because disclosure may result in embarrassment or harassment." *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1058 (3d Cir.1995); *see Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 588 (D.C.Cir.1987).

▮ Weighing against such interests are the relevant public benefits of the disclosure of certain information.

> [W]hether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to "the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny' " *Department of Air Force v. Rose*, 425 U.S. 352, 372[, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11] (1976), rather than on the particular purpose for which the document is being requested.

*Reporters Committee*, 489 U.S. at 772, 109 S.Ct. at 1481. Therefore, "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct." *Id.* at 773, 109 S.Ct. at 1481.

▮ After a thorough review of the unredacted documents, the Court finds that the defendant's use of the (b)(7)(C) exemption was appropriate in all instances. Disclosing the identities of the individuals in question would undoubtedly constitute an "unwarrant-

ed invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Furthermore, after balancing these privacy interests against the public benefit that might flow from disclosure, the Court finds that the names withheld under the (b)(7)(C) exemption in the present case "reveal[ ] little or nothing about [the FBI's] own conduct." *Reporter's Committee*, 489 U.S. at 773, 109 S.Ct. at 1481. While the Court recognizes that one of the FOIA's goals is to keep American citizens "informed about what their government is up to," *Reporter's Committee*, 489 U.S. at 773, 109 S.Ct. at 1481 (internal quotations omitted), the disclosure of the identities of the private individuals mentioned in these documents would not serve to foster such a goal.

▮ Finally, the Court has taken into consideration that whatever public interest may inhere in the identities of these individuals, "exemption 7(C) does not require a balance tilted emphatically in favor of disclosure." *Stern v. FBI*, 737 F.2d 84, 91 (D.C.Cir.1984) (quoting *Bast v. United States Dep't of Justice*, 665 F.2d 1251, 1255 (D.C.Cir.1981)); *see also King v. United States Dep't of Justice*, 830 F.2d 210, 233 (D.C.Cir.1987); *Gabrielli v. United States Dep't of Justice*, 594 F.Supp. 309, 313 (N.D.N.Y.1984). In the absence of any strong countervailing public interest in disclosure, the privacy interests of the individuals who are the subjects of the redacted material must prevail.

▮ The other exemption which remains to be examined is (b)(7)(D), which provides, in pertinent part, that

> [t]his section does not apply to matters that are ... records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency con-

ducting a lawful national security intelligence investigation, information furnished by a confidential source[.]

5 U.S.C. § 552(b)(7)(D). Again, the FBI has further subdivided the exemption into two categories: (b)(7)(D)–2, information provided by permanent symbol numbered sources; and (b)(7)(D)(4), names of, identifying data for, and/or information provided by, third parties interviewed by the FBI. In its prior decision, with respect to the (b)(7)(D)–2 exemption, the Court ruled that the FBI had properly justified the use of this exemption as to the names and identification numbers of confidential informants. *See Ajluni v. FBI,* No. 94–CV–325 at 11 (July 13, 1996). The FBI also used this exemption, however, to redact information which it claimed could *lead* to the identity of a source, such as "contacts to which the informant was privy where such contacts were known to only a limited few; and information regarding meetings, panel discussions and demonstrations." (Kelso Aff. at 15–16). With respect to this use of the exemption, the Court ruled that "[n]o facts or individualized characterizations [were] provided to support the FBI's conclusions that the redacted information could lead to the identity of the source." *Ajluni v. FBI,* No. 94–CV–325, at 12 (July 13, 1996). The inquiry that remains for the Court is thus whether the information in question could reasonably lead to the identity of a confidential source.

The Court finds that the relevant information was properly withheld pursuant to exemption (b)(7)(D)–2. The redacted information unquestionably is of a sufficiently specific and particularized nature such that disclosure could result in, at the very least, the narrowing to a limited group of individuals who might have revealed such information to the FBI. *See, e.g., National Security Archive v. FBI,* 759 F.Supp. 872, 877 (D.D.C.1991) (noting that FBI properly withheld information that would contribute to "mosaic analysis" of other information) ▮ Furthermore, because of the confidential and sensitive nature of the information involved, it is plainly apparent that the information was turned over to the FBI under an implied assurance of confidentiality.

"Under Exemption 7(D), the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." *U.S. Dept. of Justice v. Landano,* 508 U.S. 165, 172, 113 S.Ct. 2014, 2019, 124 L.Ed.2d 84 (1993). In determining whether an implied assurance of confidentiality arose, the relevant factors include the nature of the relationship between the FBI and the informant, the character of the crime at issue, and the source's relation to the crime. *Landano,* 508 U.S. at 179, 113 S.Ct. at 2023 (noting that fact that informant was paid, or was witness to a gang-related murder supported inference that informant spoke to FBI on condition of confidentiality). Upon consideration of these and other factors, the Court concludes an implied assurance of confidentiality arose, in part since "it is reasonable to infer from the circumstances that its absence would impair [defendant's] ability to elicit the information." *Keys v. United States Dep't of Justice,* 830 F.2d 337, 345 (D.C.Cir.1987). Thus, the FBI properly withheld the material under exemption (b)(7)(D)–2.

With respect to exemption (b)(7)(D)–4, only one redaction remains which was insufficiently justified, located in document 112. In that case, the exemption was used to withhold the name and address of a third party who was interviewed, where "the circumstances of the interview itself created an atmosphere in which a promise of confidentiality was understood." In its prior decision, the Court ruled that this attempt at justification was unacceptably conclusory, and that the index should have provided "some factual indication of the nature of the circumstances ... so that ... the court can decide [ ] whether an implied assurance of confidentiality arose." *Ajluni v. FBI,* No. 94–CV–325 at 13 (July 13, 1996). Upon *in camera* review, the nature of those circumstances is once again plainly apparent given the character of the information itself. Thus, the Court finds that the (b)(7)(D)–4 exemption was properly utilized.

## C. Plaintiff's Motion for Further Discovery

On August 15, 1994, the FBI was served with plaintiff's interrogatories and request for production of documents. Plaintiff sought discovery of: (1) the procedures by which documents are classified for national security purposes pursuant to specified Executive Orders; (2) the procedures by which documents are determined to be exempt from the FOIA; (3) whether any document or portion thereof withheld in response to plaintiff's FOIA requests has been previously released in response to a request by another person seeking documents pursuant to the FOIA. The government refused to respond to plaintiff's discovery request and sought a protective order. On October 25, 1994, Magistrate Judge Ralph W. Smith, Jr. entered a protective order staying discovery, and ordered the FBI to prepare its first *Vaughn* index. In turn, plaintiff was given leave to renew his Rule 56(f) motion, if such were necessary in order for him to oppose defendant's summary judgement motion. Plaintiff's discovery request has been pending since that time.

Fed.R.Civ.P. 56(f) provides that if it appears from the affidavits in opposition to a motion for summary judgment that the motion cannot properly be opposed without further discovery, the court may order a continuance to permit discovery. However, the Second Circuit has held that entitlement to relief under this rule depends upon the nonmovant explaining: (1) the facts which are sought in further discovery; (2) how those facts are expected to create a genuine issue of material fact; (3) what efforts the nonmovant has made to obtain these facts; and (4) why these efforts were unsuccessful. *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985).

As evidenced by Magistrate Judge Smith's protective order, there is no question that plaintiff has made sufficient efforts to obtain such information, and that these efforts were

entirely unsuccessful. With respect to the first two factors, however, the Court finds that plaintiff's discovery requests at this point are insufficient to raise a genuine issue of material fact.

Plaintiff's request's for discovery of the procedure by which documents are classified for national security purposes must be denied. In its July 13, 1996 Order, the Court held the FBI's amended *Vaughn* index sufficient with respect to exemptions claimed under § 552(b)(1), the "classified information exemption." [4] "[A]ccordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face." *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *see also Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir.1987) ("If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further."); *Goland. v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1978) (noting that if agency affidavits are sufficient, "district judge has discretion to forego discovery and award summary judgment on basis of affidavits."), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Since the Court ruled that the FBI's affidavits are sufficient with respect to the classified information exemption, no further discovery as to that issue is necessary.

Plaintiff also seeks discovery of the procedures by which the exemptions themselves are applied, and whether any of the documents in question were released in response to FOIA requests by other individuals. In addition, plaintiff's counsel requested that the FBI be ordered to submit further affidavits with respect to those documents that the Court found, upon *in camera* review, to have been insufficiently supported in the FBI's amended *Vaughn* index. These requests must now be evaluated in light of the Court's

4. Exemption One of the FOIA provides that "this section does not apply to matters that are: (A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to such an Executive Order." 5 U.S.C. § 552(b)(1).

conclusion, *supra,* that the remaining exemptions were in fact properly applied.

■ As to plaintiff's request for the procedures by which the FBI applies a particular exemption, such a request is clearly not within the permissible scope of FOIA discovery, which is generally limited to fact disputes involving the adequacy of the agency's search and index. *See Katzman v. Freeh,* 926 F.Supp. 316, 319–20 (E.D.N.Y.1996); *Church of Scientology v. IRS,* 137 F.R.D. 201, 202 (D.Mass.1991); *Murphy v. FBI,* 490 F.Supp. 1134, 1136 (D.D.C.1980).

> Factual disputes as to the adequacy of the agency search and index must be distinguished from the thought processes of the agency in deciding to claim a particular FOIA exemption or to classify a specific document. The latter constitutes predecisional thought processes of agency officials. They are protected from disclosure by *United States v. Morgan,* [313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941) ] ... *Morgan* and its progeny disallow discovery addressing the thought processes that lead to an exemption claim.

*Murphy,* 490 F.Supp. at 1134.

■ As to the remaining requests, the Court notes that "curtailment of discovery" is particularly appropriate where the court makes an *in camera* inspection. *Katzman,* 926 F.Supp. at 320 (citing *Laborers' Int'l Union v. U.S. Dep't of Justice,* 772 F.2d 919, 921 (D.C.Cir.1984)). In this case, as in *Katzman,* the documents in question have been subject to two levels of review. And while the government's efforts at one level were deemed inadequate (the *Vaughn* index), upon *in camera review,* the Court is satisfied that exemptions were appropriately applied. Thus, no further discovery is warranted, *id.,* and plaintiff's motion must be denied.

Since the Court finds that the FBI properly applied the remaining exemptions, and since no further discovery is warranted pursuant to Rule 56(f), the Court hereby grants defendant's motion for summary judgment.

**D. Plaintiff's Motion for Attorney's Fees**

■ In his initial motions, plaintiff moved for attorney's fees based upon the FBI's

release (after plaintiff lost his administrative appeal and filed this action) of approximately 225 new pages of previously withheld documents in their *Vaughn* index. At the time, the FBI responded that the release of the additional material was a result of relaxed Clinton administration disclosure policies and the Supreme Court's decision in *Landano,* cited *supra.* At oral argument on the FBI's first summary judgment motion, the Court held that

> The attorney's fees motion is likewise unripe for the Court's consideration at this time and plaintiff can renew that motion in the context of [his] opposition to summary judgment. In this regard, however, the Court notes plaintiff's arguments that attorney's fees are already justified because in responding to this litigation, the FBI has provided voluminous new material which was initially withheld. [Defendant] responds in the Second Declaration of John Kelso that this new material consists of 167 pages of duplicates of material earlier provided, and 140 pages of material provided in light of the Clinton administration's more liberal FOIA policies. These assertions, however, are likewise nowhere supported, illustrated or indexed with reference to the released materials, which would enable the Court to assess the defendant's contentions in this regard. Absent more detailed analysis and support, defendant will not have sufficiently controverted plaintiff's arguments as to attorney's fees.

(Tr. of 8/14/95 at 7) (emphasis added).

■ Despite the Court's explicit admonition, the FBI sealed its fate on their second summary judgment motion by offering the Supplemental Declaration of Agent Kelso, which this Court observed "offer[ed] no support for, or analysis of, its conclusory categorizations of this newly released material." *Ajluni v. FBI,* No. 94–CV–325 at 14 (July 13, 1996). The Court went on to hold that "[i]n light of the Court's specific direction in its earlier decision, no further briefing by defendant FBI on these issues will be sought or considered." *Id.*

The FOIA provides, in pertinent part, that

[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

5 U.S.C. § 552(a)(4)(E). To prove that he has "substantially prevailed," "a plaintiff must show at minimum that the prosecution of the action could reasonably have been regarded as necessary and that the action had substantial causative effect on the delivery of the information." *Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 513 (2d Cir.1976); *see also Muffoletto v. Sessions,* 760 F.Supp. 268, 273 (E.D.N.Y.1991); *Nicolau v. United States,* 699 F.Supp. 1063, 1066 (S.D.N.Y.1988). While judgment may not have been rendered in plaintiff's favor, he may still have "substantially prevailed," *Vermont Low Income,* 546 F.2d at 513, since the phrase has been construed to encompass situations in which the government discloses documents after the litigation has commenced. *See Kaye v. Burns,* 411 F.Supp. 897, 902 (S.D.N.Y.1976).

Courts look to whether a plaintiff is both eligible for, and entitled to an award of attorney's fees in FOIA litigation. *See Tax Analysts v. U.S. Dep't of Justice,* 965 F.2d 1092, 1093 (D.C.Cir.1992); *Weisberg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1495 (D.C.Cir.1984); *Fund for Constitutional Gov't v. National Archives & Records Serv.,* 656 F.2d 856, 870 (D.C.Cir.1981). Since these elements involve differing analyses, the Court undertakes each separately.

**1. Eligibility**

The concept of eligibility essentially returns us to the analysis of whether an individual has "substantially prevailed" in the litigation. *See Church of Scientology of Cal. v. Harris,* 653 F.2d 584, 587–88 (D.C.Cir. 1981); *McDonnell v. United States,* 870 F.Supp. 576, 581 (D.N.J.1994). To reiterate, a plaintiff satisfies this element if he "show[s] at minimum that the prosecution of the action could reasonably have been regarded as necessary and that the action had substantial causative effect on the delivery of the information." *Vermont Low Income Advocacy Council,* 546 F.2d at 509; *see also Archer v.*

*Dep't of Health and Human Services,* 710 F.Supp. 909, 912 (S.D.N.Y.1989). The causal relationship, however, must be more than *post hoc, ergo propter hoc;* "the mere filing of a complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg,* 848 F.2d at 1268 (internal quotations omitted).

Plaintiff made his FOIA request to the FBI in July of 1988. Over four years later, in July of 1992, the FBI responded by releasing 51 heavily redacted pages. (Pl. Compl.Ex.C). Five months later, plaintiff's administrative appeal was granted only in part, and the request was remanded for further processing. (Pl.Compl.Ex.K). Eighteen months later, plaintiff filed this lawsuit.

The FBI still had not acted on the reprocessing. When plaintiff served his initial discovery requests, which included a request for a *Vaughn* index, the FBI filed its motion for a protective order staying discovery, noting that documents responsive to plaintiff's request were still being reviewed. On October 25, 1994, Magistrate Judge Ralph W. Smith entered the protective order, and ordered the FBI to produce a *Vaughn* index by March 24, 1995.

When filed, the government's *Vaughn* index contained some 285 pages more than the governments response to plaintiff's initial FOIA request, including documents revealing significant information that had not been previously disclosed. The Amended *Vaughn* Index contained over twenty additional pages.

Under these circumstances, it is clear that plaintiff has substantially prevailed, and is therefore eligible for attorney's fees. Given the FBI's foot-dragging approach in responding to plaintiff's requests, and the additional and significant material released only *after* the Magistrate Judge ordered the FBI to produce a *Vaughn* Index, plaintiff has shown that this lawsuit was reasonably necessary, and that a sufficient causal connection existed between the initiation of the lawsuit and the FBI's release of a substantial number of documents. *See, e.g., McDonnell,* 870 F.Supp. at 584 (finding plaintiff eligible for attorney's fees where FBI released substantial number of additional documents six years

after plaintiff's initial request, and after plaintiff filed suit); *Matlack, Inc. v. U.S., EPA,* 868 F.Supp. 627, 631 (D.Del.1994) (noting that, in face of agency delay, plaintiff's suit was reasonably necessary to compel release of documents); *Church of Scientology Western U.S. v. IRS,* 769 F.Supp. 328, 330–31 (C.D.Cal.1991) (holding that documents released in conjunction with court-ordered *Vaughn* index contributed to showing of causal connection); *Des Moines Register v. U.S. Dep't of Justice,* 563 F.Supp. 82, 84 (D.D.C.1983) (same).

Moreover, the FBI's explanation that the additional documents were released not as a result of this litigation, but as a result of the Clinton Administration's revamped policies regarding FOIA disclosure, has already been addressed by this Court. "These assertions ... are ... nowhere supported, illustrated or indexed with reference to the released materials, which would enable the Court to assess the defendant's contentions in this regard." (Tr. of 8/14/95 at 7); *see also Ajluni v. FBI,* No. 94–CV–325 at 14 (July 13, 1996) (noting that FBI has "offer[ed] no support for, or analysis of, its conclusory categorizations of this newly released material."). Therefore, the Court concludes that plaintiff is eligible for an award of attorney's fees.

**2. Entitlement**

"Even if a litigant is 'eligible' for fees, [however,] the award is limited to those instances where it would promote the purpose of the FOIA to encourage the dissemination of information that benefits the public and discourages agencies form withholding valuable information." *Muffoletto,* 760 F.Supp. at 276 (citing *LaSalle Extension Univ. v. Federal Trade Comm'n,* 627 F.2d 481, 484 (D.C.Cir.1980); *Alliance for Responsible CFC Policy, Inc. v. Costle,* 631 F.Supp. 1469, 1470 (D.D.C.1986)). The "entitlement" element of our analysis thus leads us to a four factor inquiry: "(1) the benefit of the release to the public; (2) the commercial benefit of the release to the plaintiff; (3) the nature of the plaintiff's interest; and (4) the reasonableness of the agency's withholding." *Weisberg,* 745 F.2d at 1498; *see also Detroit Free Press, Inc. v. U.S. Dep't of Justice,* 73

F.3d 93, 98 (6th Cir.1996); *Aviation Data Serv. v. FAA,* 687 F.2d 1319, 1321 (10th Cir.1982).

Beginning with the last of these requirements, the Court finds that the FBI had no reasonable basis for withholding the documents that it finally released in conjunction with its first *Vaughn* index. The reasons proffered by the FBI for this withholding, i.e. the liberal Clinton/Reno FOIA policies, have twice been rejected by the Court for lack of support and specificity, as discussed *supra.* Furthermore, while the Court holds today that the FBI ultimately was justified in its use of the FOIA exemptions, that holding cannot serve to retroactively validate its original delay in releasing many of the documents at all. *Cf. Crooker v. U.S. Dep't of Treasury,* 663 F.2d 140, 142 (D.C.Cir.1980) ("The government cannot avoid the award of attorney's fees by ignoring or negligently failing to respond to repeated reminders that the bureaucratic machinery has not worked.").

The second and third factors are generally considered together. *See Cazalas v. United States Dep't of Justice,* 709 F.2d 1051, 1054 (5th Cir.1983); *Tax Analysts,* 965 F.2d at 1095; *Muffoletto,* 760 F.Supp. at 277. The Court cannot discern any commercial interest plaintiff may have in the requested material; furthermore, plaintiff asserts that his interest in disclosure arises from his "concern[ ] that the FBI has engaged in a pattern of investigating people for the exercise of their constitutionally protected rights ... [and] because of their ancestry, specifically targeting Arab–Americans." (Pl.Aff. of March 20, 1996, ¶¶ 4, 5). Both of these factors thus militate in plaintiff's favor.

Finally, we turn to the public benefit inquiry. "[T]he factor of 'public benefit' does not particularly favor attorney's fees where the award would merely subsidize a matter of private concern; this factor rather speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Aviation Data Serv.,* 687 F.2d at 1323 (quoting *Blue v. Bureau of Prisons,* 570 F.2d 529, 533–34 (5th Cir.1978)).

Plaintiff asserts that he plans to use the information that has been disclosed in connection with this litigation to speak on issues of public concern, including the FBI's alleged targeting of individuals for investigation because of their race, ethnicity, or the exercise of their constitutional rights. (Pl.Aff. of March 20, 1996 ¶ 9). While the Court expresses no opinion as to the validity of plaintiff's allegations based upon these documents, certainly we cannot say that such issues in and of themselves are beyond the domain of the public's concern. Thus, plaintiff has asserted a sufficient public benefit.

 Since the plaintiff has made a satisfactory showing with respect to these four factors, and since the plaintiff "substantially prevailed" in the initial stages of this lawsuit, the Court finds that plaintiff is both eligible for and entitled to an award of attorney's fees. Since, however, much of this litigation has involved a dispute over the propriety of the FBI's use of the FOIA exemptions, and since the FBI was granted summary judgment on that basis, the plaintiff's award should be limited to fees incurred up to, and including the opposition to defendant's second summary judgment motion, at which point the last of the additional documents were released. Therefore, plaintiff is directed to submit affidavits breaking down the attorney's fees as follows: (1) cost of initiating the action; (2) cost of responding to defendant's first summary judgment motion; (3) cost of responding to the defendant's second summary judgment motion. Defendant may submit affidavits in opposition, but such affidavits should be limited to addressing the amount of fees plaintiff should be awarded. The Court may then determine an appropriate amount.

Plaintiff's affidavits should be served upon defendant no later than twenty-one (21) days from receipt of this Order; defendant's affidavits should be served upon plaintiff no later than twenty-one (21) days thereafter. Plaintiff should then file with this Court copies of both parties' affidavits within three days of his receipt of defendant's affidavits.

### III. Conclusion

For all of the foregoing reasons, then, it is hereby

ORDERED, that defendant's motion for summary judgment is GRANTED, and the Complaint dismissed;

ORDERED, that plaintiff's motion for further discovery is DENIED;

ORDERED, that plaintiff's motion for attorney's fees is GRANTED, in an amount to be determined upon submission of the parties' affidavits.

IT IS SO ORDERED.