Dane SCHILLER and San Antonio
Express–News, Plaintiffs,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Defendant.

No. CIV.A.SA–01–CA0165FB.

United States District Court,
W.D. Texas,
San Antonio Division.

March 25, 2002.

Mark J. Cannan, Clemens & Spencer, P.C., San Antonio, TX, for Plaintiff.

Gregory J. Ball, U.S. Immigration Service, San Antonio, TX, Robert Shaw-Meadow, U.S. Atty's Office, San Antonio, TX, for Defendant.

### ORDER CONCERNING PENDING MOTIONS

BIERY, District Judge.

The parties have asked this Court to resolve their Freedom of Information Act dispute. Concepts of *stare decisis* and federal appellate precedents require the Court to balance the right of citizens to know the workings of their government against the individuals' and their families' basic human right of privacy and to be left alone. *Compare* H.R. REP. No.795, at 7–8 (1996), *reprinted in* 1996 U.S.C.C.A.N. 3448, 3450–51 (discussing evolution of the Freedom of Information Act; President Johnson declared when he signed the Freedom of Information Act into law on July 4, 1966, "This legislation springs from one of our most essential principles: A democracy works best when the people have all the information that the security of the Nation permits. No one should be able to pull curtains of secrecy around decisions which can be revealed without injury to the public interest.") *with Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J. dissenting) ("the right to be let alone-the most comprehensive of rights and the right most valued by civilized men").

Before the Court are the following motions: Defendant's Motion for Summary Judgment, Plaintiffs' Response to Defendant's Motion for Summary Judgment or, Alternatively, Motion for Continuance, and Defendant's Motion for Protective Order and to Quash Deposition Notice.

### Background

According to the complaint, in the latter part of November and early part of December of 2000, agents of the Immigration and Naturalization Service (INS) took 15 individuals[1] into custody in the San Antonio area. These individuals were placed under arrest in what the INS labeled "Operation Safe Neighborhoods." This operation was designed to take into custody and deport immigrants with past criminal records under the provisions of the applicable federal statutes. Individuals detained were to remain jailed pending deportation proceedings.

Plaintiff Dane Schiller, a reporter for plaintiff San Antonio Express–News, interviewed INS agents about Operation Safe Neighborhoods. During those interviews, Schiller sought information concerning the individuals taken into custody. He asked for the names of the individuals and the

---

**1.** According to the information received by the Court, only 12 individuals were taken into custody.

criminal charges which served as the basis for taking these individuals into custody for use in a news story he was preparing. His initial, verbal request was made to officers and agents involved in the Operation, and when his verbal request was denied, he published his story without information concerning the identity of those taken into custody.

Plaintiffs thereafter made a written request for the identifying information under the Freedom of Information Act (FOIA).[2] That request was denied on December 19, 2000, by the INS through the District Director of the San Antonio Office.[3] This determination was appealed, and when no determination was made within 20 days after the receipt of that appeal, this lawsuit was filed. In their complaint, plaintiffs assert their cause of action as follows:

> Plaintiffs seek identifying information regarding individuals who have been secretly detained and imprisoned by the United States government. Plaintiffs seek the names and birth dates of those persons and the criminal convictions which allegedly warrant the detention. The information and contents of records sought by the Plaintiffs are not subject to any of the exemptions set forth in 5 U.S.C. § 552(b). The Plaintiffs have ex-

hausted their administrative remedies and are entitled to an order from this Court enjoining the INS from withholding the information and records sought and ordering the production of those records to the Plaintiffs.

In response, defendant maintains the disclosure of the information sought (the names and birth dates) is protected by Exemptions 6 and 7 of the Freedom of Information Act and that all of the information concerning the basis for the arrests, with names redacted, has been provided to the plaintiffs.

Two months after the lawsuit was filed, defendant filed its motion for summary judgment. Defendant contends the sole issue for this Court to determine is whether the Freedom of Information Act requires the disclosure of the names, birth dates and convictions of the 12 people arrested during Operation Safe Neighborhoods or whether Exemptions 6 and 7(C) shield this information. To assist the Court in this determination, defendant submitted under seal "Defendant's In Camera Submission of Documents Responsive to Plaintiffs' FOIA Request." A total of 72 pages of documents were submitted and all were copied from INS Administrative files commonly known as "A-files" per-

---

**2.** Mr. Schiller's letter to addressed to the FOI Officer with the U.S. Immigration and Naturalization Service dated December 5, 2000, reads in part as follows:

> This request is made under the federal Freedom of Information Act, 5 U.S.C. 552. I am requesting the following information and documents:
> The names, birthdates [sic] and convictions of each of the 15 people arrested during the Operation Safe Neighborhoods initiative, which was carried out in the San Antonio and Bexar County area last week.

See Exhibit 2 attached to Plaintiffs' Original Complaint filed February 28, 2001 (docket # 1).

**3.** In his letter of December 19, 2000, the district director responded to Mr. Schiller's request, in part, as follows:

> This is in response to your Freedom of Information Act (FOIA) request received in this office on 12/08/2000, regarding subject: PEOPLE ARRESTED DURING OPERATION SAFE NEIGHBORHOOD.
> The information you have requested is exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. 552(b)(6) as disclosure would constitute a clearly unwarranted invasion of personal privacy.

See Exhibit 3 attached to Plaintiffs' Original Complaint filed February 28, 2001 (docket # 1).

taining to each of the twelve individuals arrested,[4] and copies of the convictions were submitted to plaintiffs in redacted form. The defendant explains its position in this case concerning the release of this information is not based on any desire to protect convicted sex offenders. Instead, the defendant is moving to have these individuals deported and permanently excluded from the United States. However, defendant is not convinced that the release of the documents protected by the Privacy Act to a third-party news organization-which could result in the public humiliation in the newspapers of these individuals and their families-is a logical or appropriate collateral consequence of the deportation proceedings. Moreover, many of the conviction records contain the names of child victims.

In response, plaintiffs believe summary judgment for the defendant is not warranted because the defendant has mischaracterized the nature of plaintiffs' FOIA request and misanalyzed the case. Plaintiffs also believe that consideration of defendant's motion might be better made at the same time as plaintiff's motion and with a basic factual record before the court and therefore, plaintiffs request consideration of defendant's motion be continued until preliminary discovery is conducted which is necessary to establish a factual predicate for summary judgment.

### Plaintiffs' Motion for Continuance and Defendant's Motion for Protective Order and to Quash Deposition Notice

Plaintiffs maintain that any determination as to defendant's motion for summary judgment should be postponed pursuant to rule 56(f) of the Federal Rules of Civil Procedure pending the following:

(a) initial discovery to establish the basic policies and procedures under which Operation Safe Neighborhoods operated; and

(b) adequate time for Plaintiffs' Motion for Summary Judgment to be filed based upon the anticipated factual predicate provided by the discovery sought.

Plaintiffs further maintain that discovery will establish facts as to the following matters:

(1) Whether the information sought can be characterized as derived from "personal and medical files and similar files" so as to trigger the FOIA exemption in 5 U.S.C. § 552(b)(6).

(2) Whether the information sought is such that it was "compiled for law enforcement purposes" as to trigger the FOIA exemption in 5 U.S.C. § 552(b)(7)(C).

(3) Whether the policies and procedures of the INS with respect to the Operation Safe Neighborhoods program and/or the implementation of those policies and procedures are consistent with a claim of invasion of privacy for release of identifying information of individuals arrested.

(4) The extent to which arrests under the Operation Safe Neighborhoods program were an appropriate exercise of prosecutorial discretion under the guidelines issued by the INS in November of 2000.

At a minimum, plaintiffs contend the discovery will establish that the withholding of the identities of the individuals arrested

---

4. The documents submitted for each individual are of two types (1) the underlying criminal convictions upon which the arrests and deportation proceedings were based; and (2) the "I–213" Record of Deportable Alien form which contains the name, birth date, address, social security number, and a one sentence summary of the previous conviction.

is inconsistent with the policies and procedures of the INS, and the performance of the INS as illustrated by its selection of individuals to target for arrest, detention, and deportation is a legitimate matter of public concern and inquiry. To achieve this end, plaintiffs initiated discovery [5] prior to the filing by defendant of its motion for summary judgment which prompted defendant to file its Motion for Protective Order and to Quash Deposition Notice.

In the motion for protective order and to quash, defendant asserts this case is a simple Freedom of Information Act lawsuit in which plaintiffs seek documents (1) identifying information concerning the twelve individuals arrested by the INS as part of Operation Safe Neighborhoods in November of 2000, and (2) the underlying sexual offense convictions which warranted the arrest. Defendant maintains plaintiffs did not make any request for the "policies, procedures and operation guidelines for the Operation Safe Neighborhoods program nor have they requested 'facts and circumstances regarding the apprehension and detention of [these] individuals,' the policies and procedures whereby individuals apprehended...are brought...for removal proceedings," or "facts and circumstances surrounding any removal proceedings involving [these aliens]." Therefore, defendant contends plaintiffs have gone far beyond their original FOIA request in their noticed deposition as set forth above. Moreover, to facilitate the quick resolution of this cause, defendant has submitted to the Court for in camera inspection the responsive documents.

Although plaintiffs share the view that the matter before this Court is relatively straight forward, plaintiffs also believe certain initial discovery is needed to establish even the undisputed factual basis for such a motion. Agreeing that discovery may be limited in FOIA cases, plaintiffs state there is no support for what amounts to a total proscription on discovery as sought by the government. The irony of defendant's position, that because plaintiffs requested the name, birth date, and basis of arrest, plaintiffs' discovery into the underlying facts and circumstances is unnecessary, is that defendant's motion for summary judgment is replete with unsubstantiated statements relating to facts and circumstances of the underlying arrests. Plaintiffs maintain they are not seeking to inquire into the thought process behind the particular FOIA exemption but that the withholding of the information is inconsistent with both public interest in Operation Safe Neighborhoods and INS treatment of the information alleged here to be private. Without basic discovery, plaintiffs allege they are in the awkward position of being able to respond to defen-

---

**5.** In their Amended Notice of Intention to Take Oral Deposition of Immigration and Naturalization Service, plaintiffs sought examination on the following:

1. The policies, procedures and any operational guidelines for the Operation Safe Neighborhoods program as it functioned in the San Antonio area in or about November of 2000.

2. The facts and circumstances regarding the apprehension and detention of individuals in the San Antonio area in or about November 2000 as a part of the Operation Safe Neighborhoods program, including the individuals referenced in paragraphs numbered 4 in the Complaint and Answer in this lawsuit.

3. The policies and procedures whereby individuals apprehended and/or detained through Operation Safe Neighborhoods are brought before the Immigration Court for removal proceedings.

4. The facts and circumstances surrounding any removal proceedings involving individuals referenced in paragraphs 4 of the Complaint and Answer, including the dispositions of any such proceedings.

dant's motion for summary judgment but unable to present a record to support a similar motion on their behalf.

In reply, defendant again reiterates that plaintiffs' discovery requests go "far beyond their original FOIA request." Defendant asserts that the breadth of plaintiffs' discovery requests compared to their original FOIA request is a tacit admission by plaintiffs that they cannot achieve what they truly desire in this case—a far-ranging examination of the INS' policies of prosecutorial discretion in the Operation Safe Neighborhoods initiative-through the medium of their original FOIA request. If the Court compels the depositions(s) to take place, the INS will be placed in the anomalous position of being required to produce far greater information at far greater inconvenience and taxpayer expense than if the original FOIA request simply had been granted. Defendant argues that plaintiffs' attempt to broadly examine the reasons for INS law enforcement action in adversarial depositions in these twelve cases is a distortion of the underlying purpose of the FOIA statute which is to allow citizens access to government records which serve to inform the public about whether the agency is performing its statutory duties. Moreover, defendant contends that two of the four areas of testimony specified in the deposition notice are inappropriate because witnesses could not testify regarding the specific removal proceedings and the specific arrests in question without revealing the identity of the individuals in question which is the very issue before this Court. To allow this testimony to be given would render the entire case moot and an order requiring such testimony would be, in defendant's opinion, "tantamount to a summary judgment in Plaintiffs' favor."

 Typically, discovery is not part of a FOIA case, and the decision whether to allow discovery rests within the discretion of the district court judge. *Broaddrick v. Executive Office of the President,* 139 F.Supp.2d 55, 63 (D.D.C.2001); *see Rugiero v. United States Dep't of Justice,* 257 F.3d 534, 544 (6th Cir.2001) (acknowledging that typically district courts dispose of FOIA cases by summary judgment before plaintiff is able to conduct discovery), *cert. denied,* —— U.S. ——, 122 S.Ct. 1077, 151 L.Ed.2d 978 (2002); *Miscavige v. Internal Revenue Serv.,* 2 F.3d 366, 369 (11th Cir.1993) (denial of leave to take depositions of IRS agents within discretion of court; FOIA cases generally handled on motions for summary judgment; discovery depositions inappropriate until government has chance to provide court with information necessary to make decision on applicable exemptions). When discovery is permitted it is to be "sparingly granted." *Public Citizen Health Research Group v. Food & Drug Admin.,* 997 F.Supp. 56, 72 (D.D.C.1998), *aff'd in part, rev'd on other grounds,* 185 F.3d 898 (D.C.Cir.1999). Most often, discovery is limited "to investigating the scope of the agency search for responsive documents, the agency's indexing procedures, and the like." *Id.* at 72–73; *see Friedman v. Federal Bureau of Investigation,* 605 F.Supp. 306, 316 (N.D.Ga.1981) (discovery in FOIA limited to "determining whether complete disclosure has been made. In this form, discovery is used to find whether withheld items are exempt from disclosure or whether a thorough search for documents has taken place."); *Murphy v. Federal Bureau of Investigation,* 490 F.Supp. 1134, 1137 (D.D.C.1980) (cases uniformly establish discovery in FOIA case may proceed when factual issues arise about "the adequacy or completeness of the government search and index" and this issue can arise "only after the government files its affidavits and supporting memorandum of law"); *Church of Scientology v. Internal*

*Revenue Serv.*, 137 F.R.D. 201, 202 (D.Mass.1991) (discovery in FOIA case limited to "certain factual issues, including the scope of the agency's search, its indexing and classification procedures"); *Niren v. Immigration & Naturalization Serv.*, 103 F.R.D. 10, 11 (D.Or.1984) (scope of discovery limited in FOIA cases to "whether complete disclosure has been made by the agency in response to an individual's request for information." "Whether a thorough search for documents has taken place and whether withheld items are exempt from disclosure are permissible avenues for discovery."). Because discovery is either sparingly granted or not granted at all, plaintiffs are forced to argue the "agency's withholdings exceed the scope of the statute, although only the agency is in a position to know whether it has complied with the FOIA unless the court reviews a potentially massive number of documents *in camera*." *Rugiero*, 257 F.3d at 544.

■ Here, plaintiffs seek through discovery, information concerning the policies, procedures, and operational guidelines for Operation Safe Neighborhoods as well as facts and circumstances surrounding the apprehension, detention, and any removal proceedings involving the individuals taken into custody and for which they filed the FOIA request.[6] This discovery far exceeds the limited scope of discovery usually allowed in a FOIA case concerning factual disputes surrounding the adequacy of the search for documents. *Ajluni v.*

*Federal Bureau of Investigation*, 947 F.Supp. 599, 608 (N.D.N.Y.1996); *see Public Citizen*, 997 F.Supp. at 72 (recognizing discovery limited to "investigating the scope of the agency search for responsive documents, the agency's indexing procedures, and the like"). This discovery also far exceeds the information sought in the original FOIA request, i.e. the names, birth dates, and basis for arrest of the individuals taken into custody during Operation Safe Neighborhoods. In addition, plaintiffs have been provided with copies of the underlying convictions upon which the arrests were made with only the names of the individuals and the names of the victims redacted. Moreover, defendant has submitted to this Court the responsive documents for *in camera* inspection.[7] The "curtailment of discovery" has been found to be "particularly appropriate where the court makes an *in camera* inspection." *Ajluni v. Federal Bureau of Investigation*, 947 F.Supp. 599, 608 (N.D.N.Y.1996); *Katzman v. Freeh*, 926 F.Supp. 316, 320 (E.D.N.Y.1996). Discovery has also been found to be unwarranted where the court is satisfied the exemptions have been appropriately applied. *Ajluni*, 947 F.Supp. at 608; *see Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 488 (2nd Cir.1999) ("discovery relating to [an] agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face") (*quoting Carney v. United States*

---

**6.** Plaintiffs acknowledged in their Response to Defendant's Motion for Summary Judgment that they sought to initiate discovery and "did so prior to the Defendant's Motion for Summary Judgment." Docket # 11 at page 9. That request was premature. *Murphy v. Federal Bureau of Investigation*, 490 F.Supp. 1134, 1137 (D.D.C.1980) (finding that "a factual issue that is properly the subject of discovery can arise only after the government

files its affidavits and supporting memorandum of law").

**7.** Trial courts are explicitly authorized under the FOIA to conduct *in camera* reviews of the material in question to determine the "applicability of the invoked exemptions, thereby allowing trial courts to make case specific determinations." *Kay v. Federal Communications Comm'n*, 976 F.Supp. 23, 33 (D.D.C. 1997).

*Dep't of Justice,* 19 F.3d 807, 812 (2nd Cir.1994)); *Miscavige,* 2 F.3d at 369 (discovery depositions inappropriate until government has chance "to provide the court with the information necessary to make a decision on the applicable exemptions").

Therefore, because this Court has conducted an *in camera* inspection of the documents, because plaintiffs' discovery requests far exceed the scope of discovery typically allowed in a FOIA case and plaintiffs' original FOIA request, and because plaintiffs do not challenge the adequacy or scope of the search conducted, IT IS HEREBY ORDERED that Defendant's Motion for Protective Order and to Quash Deposition Notice (docket #12) is GRANTED.

■ Pursuant to rule 56(f) of the Federal Rules of Civil Procedure, plaintiffs ask this Court to postpone any determination on defendant's motion for summary judgment to allow discovery into the basic policies and procedures under which Operation Safe Neighborhoods operated and to allow the plaintiffs adequate time to file their own motion for summary judgment based upon the factual predicate to be provided by this discovery. Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f). Plaintiffs have not provided this Court with an affidavit setting forth the reasons they are unable to justify their opposition. *See American Broad. Cos., Inc. v. United States Information Agency,* 599 F.Supp. 765, 768–69 (D.D.C.1984) (allowing discovery where plaintiffs asserted by affidavit that additional discovery was needed to justify their opposition contending discovery was needed to "fully explore" the discrepancies contained in defendants' affidavits, and to "provide important evidence...missing from these declarations, and in the exclusive control of the defendants"); *see also Strang v. United States Arms Control & Disarmament Agency,* 864 F.2d 859, 861 (D.C.Cir.1989) (district court within its discretion in denying motion for continuance in order to conduct discovery because plaintiff "offered no specific reasons demonstrating the necessity and utility of discovery to enable her to fend off summary judgment"; plaintiff never "stated concretely why she could not, absent discovery, present by affidavit facts essential to justify her opposition to [defendant's] summary judgment motion"). Instead, the only alleged discrepancy plaintiffs discuss is the submission of Exhibit D1 and D2 by the defendant in response to plaintiff Schiller's affidavit indicating he had seen a list. Although plaintiffs argue defendant's "trickling out" of "cumulative" documents has raised an issue with respect to the scope of the agency's search, the fact that some documents are not discovered until a more exhaustive search is conducted does not warrant overruling a court's decision concerning discovery. *Grand Central,* 166 F.3d at 489. In so holding, the court explained:

> [w]hen a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.

*Id.* (quoting *SafeCard Servs. Inc. v. Securities & Exchange Comm'n,* 926 F.2d 1197,

1201 (D.C.Cir.1991)). The search by an agency is not required to be "perfect" but instead must be reasonable. *Id.; see Garcia v. United States Dep't of Justice, Office of Information & Privacy,* 181 F.Supp.2d 356, 368 (S.D.N.Y.2002) (search for responsive documents "need not, and indeed could not be perfect"; search reasonable and adequate "even if 'it fails to produce all relevant material.' "; agency not expected to take extraordinary measure to find requested records but only to "conduct a search 'reasonably designed to identify and locate responsive documents' "). Here, defendants have provided the Court with unredacted copies of the information contained in the A-files which was used to support the arrest of the individuals and their placement in deportation proceedings.[8] In addition, in response to Mr. Schiller's May 11, 2001 affidavit, attached to Plaintiffs' Response to Defendant's Motion for Summary Judgment (docket # 11), averring he was shown a piece of paper by Mr. Homan during the course of his interview which included identifying information about individuals arrested, defendant has provided plaintiff a list with only the names of the individuals redacted along with the affidavit of Mr. Homan who acknowledges he met with Mr. Schiller and states, "[t]his is the only list I have seen which contains such information, and I believe this is the list to which Mr. Schiller refers." Although Mr. Schiller provides a later affidavit in which he contends the list provided by defendant and labeled as D-1 is "not the document I saw on or about December 4, 2000," he does not aver that the INS failed to engage in a good faith search for all materials or that the search by the INS for the documents was unreasonable.[9]

---

**8.** As stated by the District Counsel for the INS in his affidavit:

> I assembled official INS records which are responsive to Plaintiffs' FOIA request. Documents pertaining to individual aliens who are subject to deportation—in addition to other aliens—are maintained by the INS in individual Administrative files, commonly referred to as "A" files. The state court conviction records and the I–213 Records of Deportable Alien are maintained in these A files and were compiled for law enforcement purposes. The specific law enforcement purpose for the compilation and use of these categories of records was to support the arrest and placement in deportation proceedings of these individuals.
>
> I certify that documents bates numbered INS 0001—0072 are true and correct copies of documents taken from the A files of the twelve aliens who were apprehended in November 2000 as part of Operation Safe Neighborhoods in the San Antonio area. Documents numbers INS 0001—0060 are copies of the state court criminal convictions which served as the basis for the apprehensions described above. Documents numbers INS 0001—0060 are the only state court conviction records relied upon by the

> INS and are the only such documents in the A files pertaining to these twelve individuals. Documents numbered INS 0061—0072 are true and correct copies of INS Forms I–213 pertaining to each of the twelve individuals apprehended. These documents are responsive to Plaintiffs' FOIA request insofar as they set forth the names and birth dates of the twelve individuals apprehended.

**9.** In Plaintiff's Response to Defendant's Motion for Summary Judgment (docket # 11), plaintiff states the defendant has inundated the Court with the submission of 72 pages of unauthenticated documents for in camera inspection when in fact their request is quite simple: name, birth date, and the prior conviction which is the basis of the arrest. Plaintiffs go on to note that defendant has described a document labeled the "I–213" Record of Deportable Alien. Plaintiffs contend "[b]ased on the description in the Defendant's motion, that document contains the information sought, there being presumably one such document for each arrestee in question." Perhaps these I–213 forms which the defendant has submitted for in camera inspection is the "list" to·which Mr. Schiller refers in his affidavit.

Plaintiffs simply assert without any supporting evidence, in their Rejoinder and Reply to Defendant's Reply (docket # 17), that Mr. Schiller's affidavit raises a question as to whether D–1 is the only document about which inquiry need be made. In Defendant's Response to Plaintiff's Rejoinder, defendant maintains the list is cumulative of previous documents already submitted and will shed no light, one way or another regarding the conduct of any government agency or official nor will it assist the Court in balancing the privacy rights of the affected individuals against plaintiffs' asserted interest in public disclosure. In further support of its response, defendant submits Exhibit D–2 which it contends answers any questions regarding the origin of Mr. Homan's D–1 list and its purpose. In reply, plaintiffs did not present any evidence which would indicate the existence of an additional list or that Mr. Homan's affidavit was made in bad faith. Because agency affidavits generally "enjoy a presumption of good faith," mere allegations of agency bad faith or speculative assertions that additional documents exist will not undermine the sufficiency of the agency's submissions or cast doubt on the agency's affidavits. *Kay v. Federal Communications Comm'n,* 976 F.Supp. 23, 33 (D.D.C.1997).

Accordingly, based in part on the fact that plaintiffs failed to present an affidavit in support of their motion for continuance pursuant to rule 56(f), and because the Court is satisfied that the INS has not acted in bad faith and has conducted a reasonable search for responsive documents, IT IS HEREBY ORDERED that Plaintiffs' Alternative Motion for Continuance (docket # 11) is DENIED.

### Defendant's Motion for Summary Judgment

In the motion for summary judgment, defendant contends the sole issue for this Court to determine is whether the Freedom of Information Act requires the disclosure of the names and birth dates of the individuals arrested during the Operation Safe Neighborhoods initiative or whether exemptions 6 and 7(C) of the Freedom of Information Act shield this information from disclosure. Plaintiffs believe there are no privacy interests at stake, and plaintiffs seek to find out through their FOIA request "What the Government Is Up To." In reply, defendant maintains the documents responsive to plaintiffs' request will reveal nothing about the operations of the INS but instead will provide identifying information about twelve individuals and what they have done.

The Freedom of Information Act was passed to "facilitate public access to Government documents" and was "designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Avondale Indus., Inc. v. National Labor Relations Bd.,* 90 F.3d 955, 958 (5th Cir.1996) (*quoting United States Dep't of State v. Ray,* 502 U.S. 164, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991)). The focus of the FOIA has been described as follows:

> This basic policy of full agency disclosure unless information is exempted under clearly delineated statutory language, indeed focuses on the citizen's right to be informed about what their government is up to.

*Id.* (*quoting Halloran v. Veterans Admin.,* 874 F.2d 315 (5th Cir.1989)). The court in *Halloran* went on to explain:

> [a] corollary to this principle is that, because our focus must be upon whether disclosure serves the general public's interest in governmental affairs, the specific motives of the party making the FOIA request are irrelevant. If the general public has a legitimate, albeit

abstract, interest in the requested information such that disclosure is warranted, disclosure must be made despite the fact that the party actually requesting and receiving the information may use it for less-than-lofty purposes.

Conversely, if disclosure of the requested information does not serve the purpose of informing the citizenry about the activities of their government, disclosure will not be warranted even though the public may nonetheless prefer, albeit for other reasons, that the information be released.

*Id.* at 958–59 (*quoting Halloran* at 323). It is within this framework that courts "must balance the individual's right of privacy against the basic policy of opening an agency's action to the light of public scrutiny." *Id.* at 959.

Summary judgment is often used to decide FOIA cases. *Cooper Cameron Corp. v. United States Dep't of Labor, Occupational Safety & Health Admin.*, 280 F.3d 539, 543 (5th Cir.2002); *Struth v. Federal Bureau of Investigation*, 673 F.Supp. 949, 953 (E.D.Wis.1987). In most litigation, summary judgment is proper "if there is no genuine issue as to any material fact." *Cooper*, 280 F.3d at 543. However, in FOIA cases, the context is unusual because "the threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released." *Id.* (emphasis in original). The court explained:

The requester would thus face an evidentiary Catch–22 if the statute and the case law did not make allowances. The statute "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo,'" giving no deference to the agency's determinations. Courts generally will grant an agency's

motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under exemptions. The agency often makes this explanation in an affidavit, but the affidavit "will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." The D.C. Circuit, the federal appellate court with the most experience in this field, has held that because the burden to establish an exemption remains with the agency, the district court should not grant summary judgment based on a "conclusory and generalized" assertion, even if the FOIA requester has not controverted that assertion. We view this rule as an appropriate way of implementing the FOIA's burden-of-proof allocation on summary judgment.

*Id.* (citations omitted). The court further explained there are two varieties of summary judgment in FOIA cases, categorical and fact specific:

As the Supreme Court has advised, "for an appropriate class of law enforcement records or information[,] a categorical balance may be undertaken" in determining whether the records should be exempt from disclosure; and in ruling categorically, the district court need not examine each document in particular. This categorical approach eases judicial review of FOIA cases, permitting swifter administration and disposition of requests for records that fall into categories. Cases outside the "appropriate class," however, do not receive categorical treatment, depend on the specific content of the records sought, and require closer examination of the evidence. It is this residuum of cases that we refer to as "fact-specific."

*Id.* at 544. Defendant has submitted the responsive documents for the Court's fact-

specific review but has also indicated that it is entitled to summary judgment using the categorical approach.

In determining whether information is to be withheld, courts entertain a "strong presumption in favor of disclosure." *Id.* at 545. This presumption is not carried to the point of impracticality, however, because Congress passed exemptions which allow agencies to overcome that general presumption. *Id.* Exemption 7(C), which defendant relies on in this case, provides:

> an agency's duty to disclose records shall not apply to records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

> To determine whether this exemption applies, [the court] must first determine whether the records were compiled for law-enforcement purposes; if they were, then [the court] must weigh the public's interest in disclosure against the individual's right to privacy.

*Id.*

A record is found to have been compiled for law enforcement purposes if it "was created or acquired in the course of an investigation 'related to the enforcement of federal laws,' and 'the nexus between the investigation and one of the agency's law enforcement duties [is] based on information sufficient to support at least a colorable claim of its rationality." *Quinon v. Federal Bureau of Investigation,* 86 F.3d 1222, 1228 (D.C.Cir.1996) (*quoting Pratt v. Webster,* 673 F.2d 408, 420–21 (D.C.Cir. 1982)). The court in *Quinon* explained further:

> "[L]ess exacting proof" of a legitimate law enforcement purpose will be required of law enforcement agencies such as the FBI. Nevertheless, "the agency's

basis for the claimed connection between the object of the investigation and the asserted law enforcement duty cannot be pretextual or wholly unbelievable."

> If the agency demonstrates that there was a legitimate basis for the investigation, the burden shifts to the party requesting the documents to produce evidence that the asserted law enforcement rationale was merely pretextual.

*Id.* (citations omitted). Law enforcement for purposes of the FOIA is not limited strictly to criminal investigations but also includes within its scope civil investigations and proceedings as well as regulatory proceedings. *Rugiero v. United States Dep't of Justice,* 257 F.3d 534, 550 (6th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1077, 151 L.Ed.2d 978 (2002); *Mittleman v. Office of Personnel Mgmt.,* 76 F.3d 1240, 1243 (D.C.Cir.1996); *Mapother v. Department of Justice,* 3 F.3d 1533, 1540 (D.C.Cir.1993). Relying on *Mapother,* one district court in finding the records to be compiled for law enforcement purposes stated, "[i]t is well-settled that documents compiled by the INS in connection with the administrative proceedings authorized by the Immigration and Naturalization Act are documents compiled for 'law enforcement purposes' within the meaning of Exemption 7." *McErlean v. United States Dep't of Justice,* No. 97 CIV. 7831(BSJ), 1999 WL 791680 at *8 (S.D.N.Y. Sept.30, 1999); *see Cooper Cameron Corp. v. United States Dep't of Labor, Occupational Safety & Health Admin.,* 280 F.3d 539, 545 (5th Cir.2002) (finding plaintiff's contention OSHA's records were not compiled for law enforcement purposes feeble at best because Congress obviously intended OSHA inspections to be part of its enforcement program); *Mavadia v. Caplinger,* Civ. A. No. 95–3542, 1996 WL 592742, at *2 (E.D.La. Oct.11, 1996) (finding INS compilation of documents during investigation to

determine whether plaintiff's resident status should be terminated or whether plaintiff should be criminally prosecuted to be compiled for law enforcement purposes).

■ Here, there appears to be no real question, based on a review of the actual documents submitted to the Court, that the documents were compiled by the INS for law enforcement purposes, i.e. Operation Safe Neighborhoods. In addition, defendant has submitted the affidavit of Gregory Ball who specifically avers that the state court conviction records, submitted in redacted form to the plaintiffs, and the I–213 Records of Deportable Alien forms submitted only to this Court were "compiled for law enforcement purposes" The document submitted later in redacted form as D–2 with the attached list also indicates it was compiled in conjunction with Operation Safe Neighborhoods as it provides that a "list of the twelve aliens arrested during the operation" is attached. Accordingly, the Court finds the law enforcement element has been met and now turns to whether the public's interest in the disclosure of the names and birth dates of the individuals arrested as a result of Operation Safe Neighborhood outweighs the individuals' right to privacy. *Cooper,* 280 F.3d at 545.

As previously set forth, exemption 7(C) protects against an "unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(7)(C); *Grand Central P'ship, Inc. v. Cuomo,* 166 F.3d 473, 485 (2nd Cir. 1999). This language has prompted the use of a test which "balances the individual's interest in privacy in a withheld document against the public's need for information." *Id.* Courts have recognized that the framers of the FOIA did not "intend unwarranted 'disclosure of records regarding private citizens, identifiable by name'" by holding that individuals have a general privacy interest in preventing the dissemi-

nation of their names and home addresses. *Id.; see Cooper Cameron Corp. v. United States Dep't of Labor, Occupational Safety & Health Admin.,* 280 F.3d 539, 546 (5th Cir.2002) (case law consistently supports redactions of identity information such as witness's name, address, telephone number, and Social Security number); *Rugiero v. United States Dep't of Justice,* 257 F.3d 534, 550 (6th Cir.2001) ("clear privacy interest exists with respect to such information as names, addresses, and other identifying information even where such information is already publicly available"), *cert. denied,* —— U.S. ——, 122 S.Ct. 1077, 151 L.Ed.2d 978 (2002); *SafeCard Servs., Inc. v. Securities & Exchange Comm'n,* 926 F.2d 1197, 1205–06 (D.C.Cir.1991) (Exemption 7(C) provides privacy rights to "suspects, witnesses, and investigators"; court categorically held that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure").

Because the defendant has provided plaintiff with redacted copies of the underlying convictions upon which the 12 arrests in Operation Safe Neighborhoods were made, it appears the only issue for this Court to decide is whether defendant should also release the names and birth dates of these same 12 individuals. Both parties agree the only legal issue to be determined is whether the disclosure of the documents requested will "provide information that will shed light on the government's performance of its duties." Defendant contends plaintiffs have never explained how production of the unredacted responsive documents will shed any light on whether the INS is performing its duties or allow plaintiffs to ascertain whether the INS enforcement effort went

too far. Plaintiffs maintain the information sought relates directly to the activity of the INS in its implementation of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Based on an article appearing in the *New York Times* which concerned the detention of a 34–year–old Web designer who was arrested for a "youthful dalliance" committed at the age of 21, plaintiffs believe that the same type of inquiry into the underlying facts of the San Antonio arrests is needed, but plaintiffs are being prevented from pursuing same without the identity of the individuals. Through the pursuit of those facts and circumstances, plaintiffs argue some evaluation can be made as to whether public safety has been served or whether the INS enforcement went too far. In reply, defendant argues the relevant documents will not show whether the INS exercised prosecutorial discretion, whether the INS has tried to deport upstanding members of the community for "youthful dalliances"; whether the INS broke the law; or how the INS is implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Defendant asserts the documents responsive to the FOIA request at issue here will "only provide identifying information about twelve individual arrestees and their conduct, rather than the agency's conduct." The Court agrees.

In a similar case, the government redacted from I–213 forms, among other information, the apprehended alien's name, passport number, current file number, address, permanent foreign address, the visa identification, social security identification, the names and addresses of the apprehended alien's spouse and/or parents, the name and address of the apprehended alien's United States employer, and portions of a narrative describing the apprehension specifically words or codes identifying the alien or persons associated with the investigation. *The Buffalo Evening News, Inc. v. United States Border Patrol*, 791 F.Supp. 386, 396 (W.D.N.Y.1992). In making its determination in that case, the court relied on the Supreme Court's discussion of Exemption 7(C) in *United States Dep't of Justice v. Reporters Comm.*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), which held that pursuant to Exemption 7(C), the FBI had properly withheld from disclosure "rap sheets" which were criminal records compiled by the FBI and contained descriptive public information concerning an individual "believed to be involved in public corruption." *Buffalo*, 791 F.Supp. at 397. As set forth in *Buffalo*, the Supreme Court had commented as follows:

> [W]hether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to "the basic purpose of the Freedom of Information Act" to open agency action to the light of public scrutiny.... Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose.
>
> On the other hand, protection of the citizenry's right to be informed of official government conduct "is not fostered by disclosure of information about private citizens that ... reveals little or nothing about an agency's own conduct."

*Id.* Based upon these principles, the court found the issue was "whether the redacted portions of the Forms sought by the News reveal information about the USBP's conduct or procedures which might prompt this Court to compel disclosure, or whether the redacted portions simply reveal information about private citizens and not about the agency's conduct." *Id.* After scrutinizing a random sampling of the

Forms which had been disclosed in redacted form to the News, the court found:

all of the items redacted pursuant to Exemption 7(C) contain information about private citizens: the alien's family and given name (Block 1); the alien's passport number, visa identification, USBP file number, social security number and United States and foreign addresses.

This Court does not find that disclosure of the withheld information *alone* would reasonably shed light on the USBP's conduct. The only information redacted pursuant to Exemption 7(C) is the information which is purely personal in nature, as described above. Conversely, left unredacted on the Forms is information concerning the circumstances of apprehension, information which can reasonably inform the public of the USBP's operations. The essence of the News' claim with respect to each item of withheld information pursuant to Exemption 7(C) is that disclosure of this purely personal information is necessary to test the veracity of the USBP's conduct. Presumably, the News intends to contact the aliens, their families or those third parties mentioned in furtherance of its investigation of the USBP's activities. This Court believes that the *only* purpose which the disclosure of the redacted information could serve is to lead to a possible confrontation with the aliens, their families or third parties, or simply to make their identities known to the public.[10]

Aliens, their families and other third parties mentioned in connection with USBP investigations have a strong privacy interest in nondisclosure of their names, addresses and other information which could lead to revelation of their identities. Several Courts have agreed with this general proposition because disclosure of this personal identifying information could lead to rumor, personal embarrassment or other damage to these individuals. This Court concludes that the privacy interest of the aliens, their families and third parties arising in connection with the investigations—in this case—outweigh any public interest served by release of this information. This Court rejects the News' proposition that aliens have no privacy interest in the FOIA context.

*Id.* at 397–98 (citations omitted). Analogously, plaintiffs here also have been provided with information concerning the underlying convictions which should permit them to make "some evaluation...as to whether public safety has been served or whether...the INS enforcement went 'too far.'" As there has been no allegation that the INS has engaged in illegal activity, which in some circumstances may war-

---

**10.** As set forth in plaintiffs' article of December 5, 2000, one attorney representing some of the aliens "refused to release his clients' names." He stated:

[T]hey have tried to go on with their lives since serving punishments that included probation, community service, therapy and fines. He blamed Congress for "draconian laws" that inflict harsh burdens on immigrant families.

Exhibit 1 to Plaintiff's Complaint (docket # 1).

In addition, the Court received a letter from counsel for one of the other individuals in-

volved expressing the client's "*strong* opposition to the release of documents pertaining to his deportation proceeding. My client has a vested interest against the disclosure of his previous criminal history, as well as individual identifying information."

Moreover, defendant served a copy of its motion for summary judgment on counsel for the individuals in the event they wanted to be heard or in the event they wanted defendant to release the unredacted information to the plaintiffs.

rant the release of names of individuals to confirm or deny that allegation, the Court finds the privacy interest of these individuals in their names and identifying information, i.e. birth date, outweighs the public interest in disclosure. *Id.; see Cooper Cameron Corp. v. United States Dep't of Labor, Occupational Safety & Health Admin.*, 280 F.3d 539, 546 (5th Cir.2002) ("case law consistently supports agency redactions of identity information" which includes basic personal data such as name, address, telephone number, and Social Security number); *Rugiero v. United States Dep't of Justice*, 257 F.3d 534, 550 (6th Cir.2001) (privacy interest exists with respect to names, addresses, and other identifying information even where that information already publicly available), *cert. denied*, —— U.S. ——, 122 S.Ct. 1077, 151 L.Ed.2d 978 (2002); *Fiduccia v. United States Dep't of Justice*, 185 F.3d 1035, 1047–48 (9th Cir.1999) (privacy exemption applied to searches of individuals' homes; individuals did not lose interest in privacy by reason of earlier publicity); *Quinon v. Federal Bureau of Investigation*, 86 F.3d 1222, 1231 (D.C.Cir.1996) (in absence of evidence of misconduct or wrongdoing on part of agency, FBI allowed to "withhold the names of individuals identified in the withheld documents"); *Jones v. Federal Bureau of Investigation*, 41 F.3d 238, 247 (6th Cir.1994) (in most cases identity of persons such as FBI agents, employees, law enforcement personnel, confidential informants and other third parties does not shed light on the operations of the agency); *Landano v. United States Dep't of Justice*, 956 F.2d 422, 426 (3rd Cir.1992) (government justified in refusing to disclose names of individuals associated with criminal investigation; potential for embarrassment and harassment may "endure for many years" following criminal investigation), *cert. denied*, 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 139 (1992);[11] *SafeCard Servs., Inc. v. Securities & Exchange Comm'n*, 926 F.2d 1197, 1205–06 (D.C.Cir.1991) (disclosure of identity of "targets of law-enforcement investigations" may "subject those identified to embarrassment and potentially more serious reputational harm"; based on this danger, Exemption 7(C) provides broad privacy rights to "suspects, witnesses, and investigators"); *The Times Picayune Publ'g Corp. v. United States Dep't of Justice*, 37 F.Supp.2d 472, 477 (E.D.La.1999) (finding protectable privacy interest in mug shot under the FOIA and recognizing that Exemption 7(C) was "statutorily broadened to cover disclosures that 'could reasonably be expected to constitute'" an invasion of privacy); *McNamera v. United States Dep't of Justice*, 974 F.Supp. 946, 960–61 (W.D.Tex.1997) ("mere desire to review how agency is doing its job, coupled with allegations it is not, does not create public a interest sufficient to override the privacy interests protected by exemption 7(C)"; INS not required to turn over documents containing information concerning the "alleged illegal activity of the targets of the investigation"; the information withheld also included information provided by confidential informants, personal information, witness statements, general information

11. Certiorari in this case was also granted in 506 U.S. 813, 113 S.Ct. 51, 121 L.Ed.2d 21 (1992), concerning the court's ruling on exemption 7(D), and ultimately the judgment was vacated by *United States Dep't of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). In the opinion on remand, the district court noted that the "Supreme Court declined plaintiff's petition for review of the Third Circuit's holding on Exemption 7(C)." *Landano v. United States Dep't of Justice*, 873 F.Supp. 884, 886 n. 3 (D.N.J.1994). This Court's citation to the Third Circuit opinion is only with respect to the discussion concerning Exemption 7(C).

about the illegal activity being investigated, and investigators' notes); *Ajluni v. Federal Bureau of Investigation,* 947 F.Supp. 599, 604–05 (N.D.N.Y.1996) (substantial privacy interest exists in information which "either confirms or suggests that [individuals] have been subject to criminal investigations or proceedings"); *Southam News v. U.S. Immigration & Naturalization Serv.,* 674 F.Supp. 881, 887 (D.D.C.1987) · (names and personal identifiers of individuals who warranted removal from the Service Lookout Book, which was an investigation and law enforcement tool containing the names of violators, alleged violators and suspected violators of the criminal and civil provisions enforced by the INS, fell within ambit of Exemption 7(C) of FOIA because release of names would result in "derogatory inferences about and possible embarrassment to those individuals"; public's right to know "names of individuals found not to be excludable on political grounds is not great, and certainly that right is outweighed by the individuals' right to privacy").

Based on the arguments and the authorities cited, this Court's *in camera* review of the documents and review of the record as a whole, the Court finds the privacy interests of the individuals outweigh the public's interest in disclosure. Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (docket # 7) is GRANTED and this case is DISMISSED. Motions pending, if any, are also DISMISSED.

It is so ORDERED.